IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN TIBBETS,                              3:19-cv-00796-BR

            Plaintiff,                         OPINION AND ORDER

v.

ATHENE ANNUITY & LIFE
ASSURANCE COMPANY OF NEW
YORK,

            Defendant.


**CLINTON L. TAPPER**
Taylor & Tapper
400 E. Second Avenue
Suite 103
Eugene, OR 97401
(541) 485-1511

            Attorneys for Plaintiff

**BRETT E. APPLEGATE**
Larkins Vacura Kayser LLP
121 S.W. Morrison Street
Suite 700
Portland, OR 97204
(503) 242-4424


1 - OPINION AND ORDER

JESSE LINEBAUGH
KWESI D. ATTA-KRAH
Faegre Baker Daniels LLP
801 Grand Avenue
33rd Floor
Des Moines, IA 50309
(515) 447-4732

Attorneys for Defendant

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Athene Annuity & Life Assurance Company of New York's Motion (#8) to Dismiss. The Court concludes the record on this Motion is sufficiently developed such that oral argument would not be helpful. For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

## BACKGROUND

The following facts are taken from Plaintiff Kathleen Tibbets's First Amended Complaint and the parties' filings related to Defendant's Motion to Dismiss and are taken as true unless otherwise noted.

At some point in 2008 Plaintiff purchased a $25,000 life-insurance policy from Defendant. Plaintiff paid $650 per quarter on the policy at all relevant times.

In April 2018 Defendant contacted Plaintiff by telephone and "represented to her a build up of cash value in her policy and

solicited her taking a loan against the policy." First Am. Compl. at ¶ 12. On April 26, 2018, Defendant advised Plaintiff by letter that the "current cash value" of her policy was "$8,546.24." Decl. of Clinton Tapper, Ex. 5 at 1.

In June 2018 Plaintiff took a loan against the policy in the amount of $8,000.

On September 14, 2018, Defendant advised Plaintiff by letter:

> Recently, we were made aware that there was a system issue that caused your policy to reflect the incorrect loan value. Due to this problem, we inadvertanly [*sic*] allowed you to take an additional $8,000.00 policy loan that was not actually available. Now that the system has been corrected, your policy does not have enough cash value to cover the coverage costs and remain active.
>
> Unfortunately, we require a repayment of this policy loan to bring the policy back to a positive cash value standing. In order to bring your policy current, we need a minimum payment of $7,000.00 in the enclosed self-addressed envelope in the next 20 days. If you are unable to make this payment, please contact our office to make arrangements for a repayment plan.

Tapper Decl., Ex. 2 at 1.

From September 2018 through March 2019 Plaintiff "attempted to negotiate affordable repayment terms with [Defendant], but [Defendant] refused." First Am. Compl. at ¶ 16.

On March 21, 2019, Defendant cancelled Plaintiff's policy.

On May 22, 2019, Plaintiff filed a Complaint against Defendant in this Court alleging claims for breach of contract,

financial elder abuse, fraud, negligent misrepresentation, and money had and received.

On July 29, 2019, before Defendant filed a responsive pleading, Plaintiff filed a First Amended Complaint in which she asserts claims against Defendant for breach of contract, financial elder abuse, fraud, negligent misrepresentation, money had and received, and breach of the duty of good faith and fair dealing.

On September 9, 2019, Defendant filed a Motion to Dismiss [Plaintiff's First Amended] Complaint on the grounds that Plaintiff failed to state a claim and that Plaintiff has not suffered any damages. The Court took Defendant's Motion under advisement on October 21, 2019.

## STANDARDS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955 [(2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).


## DISCUSSION

As noted, Defendant moves to dismiss Plaintiff's First Amended Complaint on the grounds that Plaintiff fails to state a claim and that Plaintiff has not suffered any damages.

## I.  Plaintiff's First Claim for Breach of Contract

Defendant moves to dismiss Plaintiff's First Claim for breach of contract on the grounds that Plaintiff does not allege sufficient facts to state a claim and that Plaintiff has not suffered any damages.

## A.    Failure to State a Claim

"To state a claim for breach of contract, plaintiff must allege the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Slover v. Or. Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996)(quoting *Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721 (1985)).

In her First Amended Complaint Plaintiff alleges the following as to all claims:  She purchased a life-insurance policy from Defendant in 2008; she made payments from 2008 until Defendant cancelled the policy in March 2019; Defendant advised her in April 2018 that her policy had a cash value of approximately $8,000 and that she could take a loan against the policy up to that amount; she took a loan against the policy in June 2018 in the amount of $8,000; Defendant advised her in September 2018 that her policy did not actually have a value of $8,000, and, therefore, she had to repay $7,000 to Defendant; and Defendant cancelled her policy on March 21, 2019.  Plaintiff also alleges the following facts specifically as to her First Claim for breach of contract:

> Plaintiff has done everything required on her part under the terms of the Policy.
>
> The policy promised Plaintiff could take out loans against the policy value.
>
> Defendant breached the contract by providing [P]laintiff loans above the policy value.

> The policy promised payment upon Plaintiff's death in the amount of $25,000.
>
> Defendant anticipatorily breached the contract by terminating the policy, and refusing to pay the $25,000 death benefit.
>
> Defendant has breached the policy by wrongfully terminating the Policy.
>
> As a result of the Breach, Plaintiff has been denied present value in the policy, has overpaid premiums and will be wrongfully denied $25,000.

First Am. Compl. at ¶¶ 19-25.

Defendant asserts in its Motion to Dismiss that in her First Amended Complaint Plaintiff fails to allege any specific terms of the Policy that Defendant breached. *See, e.g., Blitz v. Google, Inc.*, No. 18- 00059 DKW-KJM, 2018 WL 988052, *3 (D. Haw. Feb. 20, 2018)("In breach of contract actions . . . the complaint must, at minimum, cite the contractual provision allegedly violated."). Courts, however, have made clear that although "[t]o claim a breach of contract in federal court the complaint must identify the specific provision of the contract allegedly breached by the defendant," that does not mean a plaintiff is required "'to attach the contract or recite the contract's terms verbatim. Rather, the plaintiff must identify with specificity the contractual obligations allegedly breached by the defendant.'" *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016)(quoting *Misha Consulting Grp., Inc. v. Core Educ. and Consulting*

*Solutions, Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013). As the *Misha* court explained:

> The parties dispute the legal standard for sufficiently pleading the existence of a contract. CORE cites *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App.3d 452 (1985), which holds that "the terms [of the contract] must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." *Id.* at 459. Misha, on the other hand, cites *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1102 n.7 (E.D. Cal. 2010), which collects district court cases in this circuit, concluding that most district courts in this circuit decline to follow *Otworth*. . . . For example, *James River Ins. Co. v. DCMI, Inc.*, No. 11-06345, 2012 WL 2873763 (N.D. Cal. July 12, 2012) holds that 'the majority rule in district courts in this circuit rejects application of *Otworth* in federal actions; rather, the sufficiency of the complaint is governed according to the Federal Rules of Civil Procedure and federal law interpreting those rules.'" *Id.* at *3. Under the federal rules, a "plaintiff may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect." Fed. R. Civ. P. Official Form 3, 12; *see also* Fed. R. Civ. P. 84 (declaring these forms to be sufficient).
>
>                                * * *
>
> Identifying the specific provision of the contract allegedly breached by the defendant does not require the plaintiff to attach the contract or recite the contract's terms verbatim. Rather, the plaintiff must identify with specificity the contractual obligations allegedly breached by the defendant. This is "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2013 WL 6073362, at *1.

    In *Misha* the plaintiff alleged in the complaint the

date that the defendant hired the plaintiff "to provide software management and maintenance services," the consideration that the defendant was to pay the plaintiff for those services, that the defendant failed to "make payments when due," and that the plaintiff "rendered the agreed-upon services." *Id.*, at *2. The court noted "[a]lthough the complaint could have been more specific," the "allegations put the defendants on notice and give rise to a plausible claim for relief." *Id*.

Here, like the plaintiff's allegations in *Misha*, Plaintiff's allegations in her First Amended Complaint could be more specific. Federal Rules of Civil Procedure 8(a) provides: A pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "Rule 8's liberal notice pleading standard . . . requires that the allegations provide the opposing party with fair notice of what the . . . claim is and the grounds upon which it rests." *Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL 490992, at *1 (9th Cir. Feb. 14, 2011).

Based on Rule 8, *Tribble*, and *Misha* the Court concludes on this record that Plaintiff's allegations are sufficient to put Defendant on notice and to give rise to a plausible claim for breach of contract.

**B. Damages**

Defendant also moves to dismiss Plaintiff's claim for

breach of contract on the ground that Plaintiff has not suffered any damages.

Plaintiff alleges she "has been denied present value in the policy, has overpaid premiums and will be wrongfully denied $25,000." First. Am. Compl. at ¶ 25. Defendant, however, asserts Plaintiff's allegations are insufficient to support a claim for damages because, according to Defendant, Oregon courts have held an insured who received full insurance protection before an insurer repudiated the insurance policy is not entitled to recover her premiums for the period in which she received full insurance protection. *See, e.g., Bollenback v. Cont'l Cas. Co.*, 243 Or. 498, 518-20 (1966)("[P]laintiff is not entitled to recover for those premiums paid prior to the year 1959 because it appears from the record that he received the protection these payments afforded. It would be inequitable for him to recover them. Defendant having wrongfully terminated plaintiff's policy in 1959, plaintiff is entitled to recover all premiums paid subsequent to January 1, 1959."); *Walker v. Met. Life Ins. Co.*, No. 07-1829-ST, 2008 WL 747105, at *6 (D. Or. Mar. 17, 2008) (dismissing the plaintiffs' claim for breach of insurance contract on the ground that the plaintiffs cannot establish damages because "during the past 14 years the Policy has benefitted the Walkers by providing them with life insurance coverage carrying a cash value."). Thus, Defendant asserts

Plaintiff has not suffered any damages.

Plaintiff, however, points out cases discussing *Bollenback* make clear the rule is that an insured may recover in damages the amount of the premiums paid less the actual cost of coverage to the insurance company. *See, e.g., Albertus v. Icoa Life Ins. Co.*, 247 Or. 618, 620 (1967)(The "right to rescind the contract does not carry with it the right to recover such premiums to the extent that they represent the cost of carrying insurance protection actually furnished the plaintiff."). Thus, although the amount and exact nature of Plaintiff's damages is to be determined, the Court concludes Plaintiff has sufficiently pled damages at this stage of the proceedings.

Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's First Claim for breach of contract.

## II. Plaintiff's Second Claim for Financial Elder Abuse

Defendant moves to dismiss Plaintiff's Second Claim for financial elder abuse on the grounds that Plaintiff does not allege sufficient facts to state a claim and that Plaintiff has not suffered any damages.

### A. Failure to State a Claim

Plaintiff alleges the following facts specific to her claim for financial elder abuse:

> Plaintiff had a policy with a $25,000 end of life value, and current cash surrender value.

> Plaintiff is over the age of 65 and a vulnerable person as outlined in ORS 124.100.
>
> Defendant wrongfully took Plaintiff's $25,000 value policy.
>
>                     \* \* \*
>
> Plaintiff has been damaged in an amount to be proven at trial but expected to be $25,000 and should be compensated treble that amount pursuant to ORS 124.100.

First Am. Compl. at ¶¶ 28-30, 32.

Oregon Revised Statutes § 124.100(2) provides: "A vulnerable person[1] who suffers injury, damage or death by reason of . . . financial abuse may bring an action against any person who has caused the . . . financial abuse or who has permitted another person to engage in . . . financial abuse." In addition, § 124.100(4) provides: "An action may be brought under this section only for . . . financial abuse described in ORS 124.110." In turn, § 124.110 provides the following:

> (1) An action may be brought under ORS 124.100 for financial abuse in the following circumstances:
>
> > (a) When a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person.
> >
> > (b) When a vulnerable person requests that

---

[1] The statute defines a "vulnerable person" as "an elderly person" and defines an "elderly person" as an individual who is "65 years of age or older." Or. Rev. Stat. § 124.100(1)(a), (e).

another person transfer to the vulnerable person any money or property that the other person holds or controls and that belongs to or is held in express trust, constructive trust or resulting trust for the vulnerable person, and the other person, without good cause, either continues to hold the money or property or fails to take reasonable steps to make the money or property readily available to the vulnerable person when:

> (A) The ownership or control of the money or property was acquired in whole or in part by the other person or someone acting in concert with the other person from the vulnerable person; and

> (B) The other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested or otherwise made available to the vulnerable person.

(c) When a person has at any time engaged in conduct constituting a violation of a restraining order regarding sweepstakes that was issued under ORS 124.020.

Plaintiff does not specify in her First Amended Complaint which provision of § 124.110 Defendant allegedly violated. Plaintiff also does not make clear in her Response to Defendant's Motion to Dismiss which provision of § 124.110 allegedly supports her claim nor can the Court determine from Plaintiff's Response on which provision of the statute Plaintiff relies. On this record, therefore, the Court concludes Plaintiff has not stated a claim for financial elder abuse because Plaintiff's allegations do not "provide the opposing party with fair notice of what the . . . claim is and the grounds upon which it rests." *Tribble*, 2011 WL

490992, at *1.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Second Claim for financial elder abuse.

## III. Plaintiff's Third Claim for Fraud

Defendant moves to dismiss Plaintiff's Third Claim for fraud on the grounds that Plaintiff does not allege sufficient facts to state a claim and that Plaintiff has not suffered any damages.

### A. Standards

#### 1. Pleading Standard

As noted, Federal Rules of Civil Procedure 8(a) provides: A pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "Rule 8's liberal notice pleading standard . . . requires that the allegations" provide the opposing party with "fair notice of what the . . . claim is and the grounds upon which it rests." *Tribble*, 2011 WL 490992, at *1.

With respect to allegations of fraud, however, Federal Rules of Civil Procedure 9(b) requires when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

To satisfy the additional burdens imposed by Rule 9(b), the party must allege at a minimum "the time, place and

nature of the alleged fraudulent activities." *Tok Cha Kim v. CB*
*Richard Ellis Haw., Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008)
(citation omitted). "Rule 9(b) demands that the circumstances
constituting the alleged fraud 'be specific enough to give [the
opposing party] notice of the particular misconduct . . . so that
[it] can defend against the charge and not just deny that [it
has] done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d
1120, 1124 (9th Cir. 2009)(quoting *Bly-Magee v. Cal.*, 236 F.3d
1014, 1019 (9th Cir. 2001)). "Averments of fraud must be
accompanied by 'the who, what, when, where, and how' of the
misconduct charged." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097, 1106 (9th Cir. 2003)). "A party alleging fraud
must set forth more than the neutral facts necessary to identify
the transaction." *Id.* (quotation omitted).

### 2. Fraud Standard

To state a claim for fraud under Oregon common law
a party must allege:

> (1) the defendant made a material
> representation that was false; (2) the
> defendant knew that the representation was
> false; (3) the defendant intended the
> plaintiff to rely on the misrepresentation;
> (4) the plaintiff justifiably relied on the
> misrepresentation; and (5) the plaintiff was
> damaged as a result of that reliance.

*Claus v. Columbia State Bank*, No. 3:16-CV-01509-AC, 2019 WL
5624754, at *5 (D. Or. Oct. 30, 2019)(citing *Horton v. Nelson*,

252 Or. App. 611, 616 (2012)). *See also Strawn v. Farmers Ins. Co.*, 350 Or. 336, 352 (2011)(same); *Knepper v. Brown*, 345 Or. 320, 329 (2008)(noting more recent Oregon cases use an abbreviated five-element list as opposed to the older nine-element list and that historical references to proximate cause are subsumed in the last element of the abbreviated list).

**B.  Analysis**

In her Third Claim for fraud Plaintiff alleges:

> Defendant represented Plaintiff had an accrued value of $8,000 in her policy.
>
> Defendant represented Plaintiff could or should take a loan of $8,000 on her policy.
>
> That representation was false.
>
> That representation was material.
>
> Defendant knew the representation was false or was ignorant of its truth.
>
> Defendant intended the representation be acted upon.
>
> Plaintiff was ignorant of the falsity of the representation and relied upon its truth.
>
> As a result, Plaintiffs [*sic*] policy was cancelled and Plaintiff was damaged.

First Am. Compl. at ¶¶ 34-41.

Defendant asserts Plaintiff's allegations are merely a formulaic recitation of the elements of a fraud claim. Specifically, Defendant contends Plaintiff does not present any facts to support her allegation that Defendant knew the

16 - OPINION AND ORDER

representation about the accrued value of Plaintiff's policy was false or that Defendant intended Plaintiff to act on such a representation.

As noted, Rule 9(b) provides "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" when alleging fraud. Nevertheless, courts have held allegations similar to or even more detailed than those made by Plaintiff are insufficient to state a claim for fraud. *See, e.g., Staton v. BAC Home Loans Serv., LP*, No. 6:10-cv-01306-PA, 2014 WL 1803376, at *3 (D. Or. May 6, 2014)("Plaintiff's third count alleges that a representative of BAC sent Plaintiff a letter indicating that she was eligible for a loan modification. Plaintiff was apparently not eligible and many of the phone numbers she was provided led to automated phone services. . . . Plaintiff alleges that the representative knew the letter to be false and that the letter 'caused plaintiff damage,' without any of the particularity required under Rule 9."); *Claus*, 2019 WL 5624754, at *8 (concluding the plaintiff has not sufficiently pled facts to support his fraud claim and noting "the 2012 financial statements and SHB not being a 'full-service builder' does not support a plausible inference that [the defendant's] representation regarding SHB's creditworthiness or capitalization was false, that [the defendant] knew of the falsity if it was false, or that [the defendant] was ignorant of its truth.").

In addition, in its letter sent to Plaintiff in September 2018 Defendant stated "there was a system issue that caused your policy to reflect the incorrect loan value. Due to this problem, we inadvertantly [*sic*] allowed you to take an additional $8,000.00 policy loan that was not actually available." Plaintiff, however, does not provide any factual basis for her allegation that Defendant knew the statement about her policy value was false when the statement was made.

On this record the Court concludes Plaintiff has not pled fraud with the particularity required by Rule 9(b). Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Third Claim for fraud.

## IV. Plaintiff's Fourth Claim for Negligent Misrepresentation

Defendant moves to dismiss Plaintiff's Fourth Claim for negligent misrepresentation on the grounds that Plaintiff does not allege sufficient facts to state a claim and that Plaintiff has not suffered any damages.

To state a claim for negligent misrepresentation under Oregon law a plaintiff must allege:

> (1) a special relationship between plaintiff and defendants; (2) that defendants failed to exercise reasonable care by negligently making false representations or omitting material facts; (3) plaintiffs reasonable reliance on those false representations or omissions; and (4) damages sustained by plaintiff.

*Claus*, 2019 WL 5624754, at *16 (citation omitted).

In her Fourth Claim Plaintiff alleges:

> In the Course and Scope of Defendant's business, Defendant advised Plaintiff she could or should take a loan on her policy.

> The availability of a Policy loan was false information.

> Defendant was a non-gratuitous supplier of information, supplying information to it's [*sic*] client within the course and scope of Defendant's business, thereby under a duty to exercise reasonable care and avoid misrepresenting facts.

> The false information was supplied for the guidance of Plaintiff in a business transaction.

> The false information caused pecuniary loss to Plaintiff.

> Plaintiff justifiably relied on Defendant's false information.

> Defendant failed to exercise reasonable care in obtaining or providing the information.

First Am. Compl. ¶¶ 43-49. Defendant asserts in its Motion to Dismiss that Plaintiff has failed to plead facts sufficient to establish that Plaintiff and Defendant had a "special relationship." In her Response to Defendant's Motion Plaintiff asserts "the facts indicate a special relationship existed" and/or Defendant was a "non-gratuitious supplier of information."

"Under Oregon law, a negligent misrepresentation claim for economic losses 'must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.'" *Rich v. Wells Fargo Bank*, NA, No. 1:14-CV-00393-PA, 2014 WL 2770316, at *1-2

(D. Or. June 18, 2014)(quoting *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159 (1992)).  A party may be held to such a heightened duty when there is a "special relationship" in which "the party sought to be held liable had some obligation to pursue the interests of the other party."  *Conway v. Pacific Univ.*, 324 Or. 231, 237 (1996).  "Certain professional relationships, such as lawyer-client, physician- patient, engineer-client, and agent-principal, have been recognized as special relationships."  *Claus*, 2019 WL 5624754, at *16 (citing *Conway*, 324 Or. at 240-41, and *Eulrich v. Snap-On Tools Corp.*, 121 Or. App. 25, 36 (1993)).

When the relationship at issue is not of the type explicitly recognized, Oregon courts have held whether a special relationship exists depends on "the nature of the parties' relationship . . . [in comparison] to other relationships in which the law imposes a duty on parties to conduct themselves reasonably."  *Onita Pac. Corp.*, 315 Or. at 160.  To determine whether a relationship amounts to a special relationship courts consider whether:

> (1) [o]ne party relinquishes control over matters, usually financial, and entrusts them to the other party, (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship.

*Bell v. Pub. Emps. Ret. Bd.*, 239 Or. App. 239, 249-50 (2010)

(citations omitted).  Oregon courts, however, have held the mere act of relinquishing control over responsibilities does not trigger the heightened duty of a special relationship.  *See Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 161-62 (2001)(noting a tort duty is not imposed on a party merely because "one party to a business relationship begins to dominate and to control the other party's financial future," but rather the analysis for special relationship cases focuses on "whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests.") (emphasis in original).

Plaintiff notes the policy provided Plaintiff could take loans against the cash value of the policy and that "the company will not loan more than the cash value."  Plaintiff asserts "[t]his provision makes the [parties' special] relationship clear."  Pl.'s Resp. at 12.  The Court, however, concludes these facts indicate only that the parties had an ordinary arm's-length commercial relationship.  The Oregon Supreme Court has declined to find the existence of a special relationship resulting in a heightened duty under such circumstances.  *See, e.g., Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 650 (1995)(finding a creditor-debtor relationship to be "arm's-length" and "commercial" rather than the kind of special relationship that could support a claim for negligent

misrepresentation).  Neither Defendant nor Plaintiff allege

Plaintiff authorized Defendant to exercise independent judgment

or control on behalf of Plaintiff or that Defendant was acting in

a fiduciary-type role when it advised Plaintiff that she could

take a loan against her policy.  Plaintiff's allegations,

therefore, are insufficient to establish a special relationship

of the kind necessary to support a claim for negligent

misrepresentation.

As noted, Plaintiff also alleges Defendant was a

"non-gratuitous supplier of information, supplying information to

it's [*sic*] client within the course and scope of Defendant's

business," and, therefore, Plaintiff asserts she may bring a

claim against Defendant for negligent misrepresentation.  The

Oregon Supreme Court discussed negligent misrepresentation in the

context of a "nongratuitous supplier of information" initially in

*Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149 (1992).

In that case the court

> noted some legal scholars "distinguish between
> misrepresentations made by an adversary in a sales
> transaction and by one who holds out to the
> general public that he or she supplies
> information."  The court suggested the latter may
> have a duty to avoid making negligent
> misrepresentations.  315 Or. at 162.

*Doral Money, Inc. v. HNC Properties, LLC*, No. 3:14-CV-00545-BR,

2014 WL 3512501, at *6 (D. Or. July 10, 2014).  In *Conway v.*

*Pacific University*, however, the Oregon Supreme Court explained a

nongratuitous supplier of information within the context of a claim for negligent misrepresentation "is someone in the business of supplying information for a fee." 324 Or. 231, 243 (1996). Here Defendant is not in the business of supplying information for a fee. The allegations in Plaintiff's First Amended Complaint and the record before the Court establish Defendant is in the business of insurance coverage, that Defendant is only paid premiums to supply insurance coverage, and that Defendant is not paid premiums to supply information. The Court, therefore, concludes Defendant is not a nongratuitious supplier of information within the context of the tort of negligent misrepresentation.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Fourth Claim for negligent misrepresentation.

## V. Plaintiff's Fifth Claim for Money Had and Received

Defendant moves to dismiss Plaintiff's Fifth Claim for money had and received on the grounds that Plaintiff does not allege sufficient facts to state a claim and that Plaintiff has not suffered any damages.

"A claim for money had and received is based on the principle that a person or entity should not be unjustly enriched at the expense of another." *Spada Properties, Inc. v. Unified Grocers, Inc.*, 38 F. Supp. 3d 1223, 1233 (D. Or. 2014), amended (Sept. 22, 2014)(citing *Hogan v. Aluminum Lock Shingle Corp.*,

214 Or. 218, 225 (1958)). To state a claim for money had and received a plaintiff must allege: "(1) the defendant has received money, that (2) in equity and good conscience should be paid over to the plaintiff." *Spada*, 38 F. Supp. 3d at 1233. *See also Grimstad v. Knudsen*, 283 Or. App. 28, 52 (2016)("plaintiffs' money had and received claim required them to prove that defendants held money to which plaintiffs were entitled as a matter of right."); *Belmont Int'l v. Am. Int'l*, 313 Or. 112, 124 (1992)("The generally accepted test which determines whether a recovery [for money had and received may be obtained] . . . is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts [a] claim." (quotation omitted)); *C. A. M. Concepts, Inc. v. Gwyn*, 206 Or. App. 122, 128 (2006)("Recovery on a theory of money had and received is based on a promise implied by law and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution.").

Plaintiff alleges the following facts to support her claim for money had and received:

> Defendant wrongfully terminated the policy or wrongfully caused Plaintiff to take action resulting in the termination of the policy.

> Plaintiff paid premiums on the Policy in an amount to be determined at trial but approximated to be $27,000.

> Defendant has been unjustly enriched in the amount of $27,000 and under the terms of equity and

> fairness, should be forced to return that money to
> the Plaintiff.

First Am. Compl. at ¶¶ 51-53. Defendant asserts these facts are
not sufficient to establish that Defendant was unjustly enriched.
As noted, courts in Oregon have held plaintiffs are not entitled
to recover insurance premiums for periods in which they received
insurance coverage. *See, e.g., Bollenback*, 243 Or. at 518-20
("[P]laintiff is not entitled to recover for those premiums paid
prior to the year 1959 because it appears from the record that he
received the protection these payments afforded.  It would be
inequitable for him to recover them.  Defendant having wrongfully
terminated plaintiff's policy in 1959, plaintiff is entitled to
recover all premiums paid subsequent to January 1, 1959.");
*Walker*, 2008 WL 747105, at *6 (concluding the plaintiffs could
not establish damages because "during the past 14 years the
Policy has benefitted the [plaintiffs] by providing them with
life insurance coverage carrying a cash value.").

Plaintiff does not allege nor does the record reflect
Defendant failed to provide insurance coverage for any of the
periods in which Plaintiff paid premiums.  Defendant's retention
of the premiums for the periods it provided coverage, therefore,
is not unjust or inequitable.  In addition, Plaintiff alleges she
received a loan from Defendant for $8,000 and does not allege she
repaid the loan.  It, therefore, is unclear how Plaintiff's
allegations could support a claim against Defendant for money had

and received.  Thus, the Court concludes on this record that Plaintiff has not alleged facts sufficient to state a claim for money had and received.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Fifth Claim for money had and received.

## VI. Plaintiff's Sixth Claim for Breach of the Duty of Good Faith and Fair Dealing

Defendant moves to dismiss Plaintiff's Sixth Claim for breach of the duty of good faith and fair dealing on the grounds that Plaintiff does not allege sufficient facts to state a claim and that Plaintiff has not suffered any damages.

### A. The Law

"Every contract includes an implied duty of good faith and fair dealing." *Claus*, 2019 WL 5624754, at *18 (citing *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615 (1995)). "The contractual good faith doctrine is designed to effectuate the reasonable contractual expectations of the parties." *Cutler v. U.S. Bank Nat'l Ass'n*, No. 3:18-CV-01045-YY, 2019 WL 157919, at *3 (D. Or. Jan. 9, 2019)(quotation omitted).  The duty, therefore, "does not alter the interpretation of the contract or insert new terms into the contract." *Claus*, 2019 WL 5624754, at *18 (citing *W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*, 284 Or. App. 316, 324-25 (2017)).  Similarly, the "duty [of good faith and fair dealing] cannot expand the parties'

substantive duties under a contract; rather, it relates to the performance of the contract." *Gibson v. Douglas Cty.*, 197 Or. App. 204, 217 (2005). The duty of good faith and fair dealing "emphasizes faithfulness to an agreed common purpose and is designed to effectuate the reasonable contractual expectations of the parties." *Workshops Portland Carson, L.L.C. v. Carson Oil Co.*, No. 3:15-CV-01234-AC, 2017 WL 1115164, at *4 (D. Or. Mar. 24, 2017)(quotation and citations omitted).

To state a claim for breach of the duty of good faith and fair dealing a plaintiff must allege "the relevant contract terms, the parties' reasonable expectations under the contract, [and] how [d]efendant's conduct was inconsistent with the parties' reasonable expectations." *Cutler*, 2019 WL 157919, at *3. A plaintiff must allege the way in which the defendant did "'something other than that which [d]efendant had an express contractual right to do.'" *Id.* (quoting *Lorenz v. Deutsche Bank Nat'l Trust Co.*, No. 3:15-cv-00680-SI, 2015 WL 5813174, at *5 (D. Or. Oct. 5, 2015)).

### B. Analysis

As noted, Plaintiff alleges as to all claims: she purchased a life-insurance policy from Defendant in 2008; she made payments from 2008 until Defendant cancelled the policy in March 2019; Defendant advised her in April 2018 that her policy had a cash value of approximately $8,000 and that she could take

a loan against the policy up to that amount; she took a loan against the policy in June 2018 in the amount of $8,000; Defendant advised her in September 2018 that her policy did not actually have $8,000 in value, and, therefore, she had to repay $7,000 to Defendant; and Defendant cancelled her policy on March 21, 2019.

Plaintiff alleges the following facts specific to her Sixth Claim for breach of the duty of good faith and fair dealing:

> Defendant has breached the duty of good faith and fair dealing in some or all of the following ways:
>
> a. Misrepresenting the value and loan availability on the Policy to Plaintiff.
>
> b. Failing to keep accurate records of the value of the Policy.
>
> c. Soliciting Plaintiff to take loans against the value of the policy which caused Plaintiff to forfeit the policy.
>
> d. Failing to advise Plaintiff that certain loans against the value of the policy would cause Plaintiff to forfeit the policy.
>
> e. Failing to negotiate reasonable repayment rates for the loan after causing plaintiff to take the loan on the value of the policy.

First Am. Compl. at ¶ 56. As with Plaintiff's claim for breach of contract, the Court concludes "[a]lthough the complaint could have been more specific," these allegations are sufficient to "put the defendant[] on notice and [to] give rise to a plausible

claim for relief." *See Misha*, 2013 WL 6073362, at *2.

For the reasons stated in its evaluation of Plaintiff's claim for breach of contract, the Court concludes at this stage of the proceedings that Plaintiff has sufficiently pled damages although the amount and the exact nature of Plaintiff's damages are yet to be determined.

Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's Sixth Claim for breach of the duty of good faith and fair dealing.

## VII. Amendment of First Amended Complaint

The Court has concluded Plaintiff has failed to state claims for financial elder abuse, fraud, negligent misrepresentation, and money had and received. The Ninth Circuit, however, has "made clear that district courts commit reversible error by dismissing a suit without any chance to amend, even if no request has been made, unless the district court determines additional facts could not possibly cure the deficiency." *Hansen v. Gov't Employees Ins. Co.*, 771 F. App'x 385, 386 (9th Cir. 2019)(citing *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018)). Here the Court cannot determine on this record that there are not any additional facts that could cure the deficiencies in Plaintiff's claims for financial elder abuse, fraud, negligent misrepresentation, and money had and received. The Court, therefore, grants Plaintiff leave to file a Second Amended

Complaint **no later than February 3, 2020,** to cure the deficiencies set out in this Opinion and Order.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#8) to Dismiss.  The Court **GRANTS** Plaintiff leave to file a Second Amended Complaint **no later than February 3, 2020,** to cure the deficiencies set out in this Opinion and Order.

IT IS SO ORDERED.

DATED this 10th day of January, 2020.

_____
ANNA J. BROWN
United States Senior District Judge